Mr. Duncan. Thank you. May it please the Court, I apologize for my tardiness. Apparently an hour and a half from Skokie is not enough time. Yeah, we have a more challenging traffic pattern in Chicago currently. Where I am, I can drive from my house to my office in less than four minutes and that's seven miles away. So you have less traffic in Wisconsin Rapids? Just a bit. Thank you. Good morning. I'm Dana Duncan. I represent Deborah Slayton. Ms. Slayton appears on applications for Title II and Title XVI of the Social Security Act. She was born on July 11th, 1956. Alleged an onset of disability of May 1st, 2009. At the date she was alleged disabled, she was 52 years of age. Her past work history was light or higher, so therefore if the ALJ, she had a 10th grade education, I should point out, therefore if the ALJ would have found that she was limited to sedentary work, she would have met the medical vocational guidelines. He found her limited to light and found that she could perform her past work as or her past work which was light. In this particular case she suffered from depression, hepatitis C, chronic pulmonary or obstructive pulmonary disease, left and right knee pain with noted osteoarthritis and both probable lumbar spondylosis and bilateral shoulder problems with osteoarthritis. The issue before the court is one that's relatively simple. This is a clean case. There is very little else involved. This is one issue, the claimant's credibility. The court has previously held in Carradine v. Barnhart that a claimant's subjective testimony supported by medical evidence that satisfies the pain standard is in and of itself sufficient to support a finding of disabling even if or when its existence is unsupported by objective evidence. In this particular case all of the ALJ's findings pertain to what he perceived as a lack of objective evidence and a few other points that I addressed primarily in the brief. The issue in this is whether the ALJ undertook any kind of proper pain analysis. He did not. One only needs to look at the potential medical information or medical issues involved here, whether it be hepatitis, which is noted as causing fatigue given its chronic nature, the fact that she had osteoarthritis in both knees, one of which had to have surgery, which would have potentially been limiting her from standing, the fact that she also had bilateral arthritis in both shoulders, which would have potentially limited her from lifting even 10 pounds more than occasionally, which would have potentially placed her in a light category. She testified and provided a detailed adult function report, two different ones, indicating what her limitations were. Her hands cramped after only 10 minutes, she had difficulty buttoning her pants or her shirt, tying her own shoes, washing her own hair, she had trouble feeding herself because the food fell off her fork and spoon, she couldn't bend, she couldn't reach. The medical evidence in this particular case shows that she received steroid injections. Specifically, case law both in this circuit and others indicates that when somebody undergoes a steroid injection, which is a very painful procedure, an invasive procedure, it's usually a good sign of credibility that no one would undertake such painful procedures unless they hope to alleviate more painful symptoms. In this particular case, though, the judge did not do that pain analysis. He did not consider all of these statements. He instead focused on a He noted, for instance, that she he had instead focused on just a few points as I indicated. Didn't he note, Mr. Duncan, that the physicians indicated that her pain seemed to be out of proportion to what the examination produced? It may have been. She reported that she needed to lay down and sleep for three hours, but we don't even need to go there because all that needs to be done is to have gone one step below where the judge came in. We don't need to find that she's completely unable to work. We don't need to find that she's limited to part-time work. All we need to do is look at the evidence and determine whether she's limited to sedentary work. If she's limited to sedentary work, she meets the grid rule under the medical vocational guideline and would be found disabled. If you just focused on the fact that the judge really didn't do much analysis of pain and whether her knees alone could be causing pain, precluding her from standings for six out of eight hours, that in and of itself is sufficient. He looked at a lot of different findings. He noted that there was a lack of muscle strength and neurological findings are not pain-related. In osteoarthritis, other than telling that there is osteoarthritis, the level of pain associated with osteoarthritis, whether it be in the two knees or the two shoulders, you can't objectively assess that. There's no pain-o-meter that people are hooked up to that assess what level of pain they have. You have to look at it as a whole and assess the whole case and determine whether or not it is. Mr. Duncan, you indicated you're pursuing both disability insurance benefits and supplemental security income in this case? Correct. And the plaintiff's last date insured, if I recall correctly, was in September of 2009, is that right? Yes. Were any of the severe impairments that she's relying upon diagnosed before that date of last insured? The indication I have is that the medical treatment, the reports that we have in the record, with one exception, are from after that date, 2010 forward. Correct. Most of her medical treatment was in 2012. So, in essence, isn't this really about SSI at this point? It could very well be. The issue is that judges are instructed when they're evaluating this to look at the potential earliest onset. If she's measured with osteoarthritis in the knees in 2012, that condition doesn't just appear, but yes. Sure, but I don't think I've ever seen a case before where there was no diagnosis, not even, I mean, not the slightest treatment before the date of last insured where disability insurance benefits were appropriate. Let me, well, moving on to the SSI information or time period, did any doctors opine or disagree with the residual functional capacity as found by the ALJ? No doctor stated an opinion at all in regards to what her condition was or was not, other than the state agency doctors who indicated light. Both of their opinions were rendered fairly early in the process. They did not have the full record up until 2013, I believe. I'd have to double-check that number, but we have more recent records which continue to show additional pain and steroid injections. In fact, I believe she started having steroid injections again shortly before the hearing in this, and I think that was testimony that she made. And have I got this right that Dr. Carlson examined her first as an outside examining physician for the agency, but also practices with her treating physicians? My understanding, and again, I didn't handle this at the time, so I'm not completely sure of how this all took place. I can only go by the record. It appears that she may have went in for a consultation with Dr. Carlson, and when you're looking at Northwest Wisconsin, treating options are very limited. He may very well have agreed to then start subsequently treating her. So he went from being consultative to treating. All right, I believe my time is up. If there's nothing else, I'll save any additional time, if any, for rebuttal. Thank you, Mr. Duncan. Ms. Dowd? May it please the Court. Lou Hahn on behalf of the Commissioner of Social Security. I'd like to start where Judge Hamilton ended, which is on the fact that there were no medical opinions whatsoever in this record that suggested greater limitation than what the ALJ found in his RFC finding. It's most likely for that reason that Ms. Slayton, in her arguments, relies on her subjective complaints. But the ALJ thoroughly considered all of her subjective allegations, and the ALJ was not required to wholesale adopt those without looking at the rest of the record. And in this case, the ALJ also considered the mild to moderate objective test results, the fact that the physicians who saw Ms. Slayton were unable to find any evidence to substantiate her allegations of pain, the fact that Ms. Slayton was also prescribed generally conservative treatment, and that Ms. Slayton had a good response to that treatment. The issue is not the fact that Ms. Slayton had a host of physical impairments, which the ALJ did recognize by finding that since March 2011, and again, that is after the date last insured, so this is indeed an SSI only case, that since then she had a host of impairments, which the ALJ found to be severe. As the district court explained, it's not the fact that those impairments themselves exist and that she had a diagnosis of them. It's the kind of work-related limitations caused by those impairments. And the ALJ here evaluated the relevant evidence and looked at the fact that first, the objective medical tests, including x-rays, MRIs, and EMG, a nerve conduction study, showed at most mild to moderate degenerative changes in some of Ms. Slayton's joints. Also, it is very telling that Ms. Slayton saw Dr. Carlson not just for the consultative examination in that she was precluded from heavy manual labor and also from jobs that involved frequent bending, squatting, and stooping. She did continue to see Dr. Carlson. She also sought treatment from a rheumatologist, Dr. Navarro. It's very telling that Dr. Navarro never rendered an opinion that limited her to any particular kind of exertional work whatsoever, let alone one that was more limiting than what the ALJ found. Dr. Navarro most recently saw her one of the treatment notes from June 2013. At that time, Ms. Slayton had just undergone mildly invasive arthroscopy in her right knee. He examined all of the other joints aside from the right knee, and he actually found very good stability in all of her joints, said she was doing well, and said he had no further recommendations for Ms. Slayton. Again, Dr. Carlson also saw Ms. Slayton in June 2013, at which time she was complaining about chronic elbow pain. She was wearing braces on all four of her limbs, which Dr. Carlson said was not necessary. He recommended the very conservative treatment of using her elbow and icing it, and again, he rendered no opinion whatsoever to limit her to any particular kind of exertional level of work. So at the heart of this case is Ms. Slayton, who would have liked the ALJ to adopt all of her subjective complaints. The fact that the ALJ did not do so is not reversible error. Ms. Slayton is the one who had the burden to furnish the evidence to prove that she was disabled, and she failed to do that. The ALJ took the evidence and crafted the most limited RFC that he did, which was more limited than what the state agency reviewing doctors Richards and Shaw found, and based on that RFC finding, which is a reduced range of light work, the ALJ found that she was still capable of doing her past relevant work as a laundry worker. For those reasons, unless the panel has any questions, as well as for the reasons stated in the Commissioner's brief, we ask that this court affirm the district court's decision. Thank you, Ms. Hunt. Ms. Duncan, your time is expiring, but you may have a minute if you want to worry about anything. Just very briefly, thank you for the opportunity. First of all, we're not asking that all of her subjective complaints be honored. All we need to do is reduce her from light to sedentary. The fact that she said she had to sleep three hours a day is irrelevant. That's not necessary. That would be work perclusive. All we have to do is assess her pain. Is the condition that she has sufficient to believe that if the judge would have applied a pain analysis, he would have reduced it from light to sedentary, meaning she can't stand for six out of eight hours, but two out of eight. She can't lift 20 pounds occasionally, but only 10. And so that's the significant issue here. And the court has said repeatedly in various cases that this pain analysis must be and that pain alone is sufficient, but yet we find nothing in this record showing that the judge evaluated the pain and complied with the pain analysis. Thank you. Thank you, Mr. Duncan. Thanks to both counsel. Case is taken under advisement.